IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | | |
|---|---|---|
| GEORGE H. ROUNTREE, | * | |
| Plaintiff, | * | |
| v. | * | CV 619-008 |
| ENCOMPASS HOME AND AUTO INSURANCE COMPANY, | * | |
| Defendant. | * | |

## O R D E R

Before the Court is Defendant Encompass Home and Auto Insurance Company's ("Encompass") motion for partial summary judgment. (Doc. 26.) The Clerk has given Plaintiff notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and the consequences of default. Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), have been satisfied. The motion has been fully briefed and is ripe for decision. For the following reasons, the motion is granted in part and denied in part.

I.   BACKGROUND

This case arises from damage allegedly caused by faulty workmanship on Plaintiff George Rountree's Statesboro, Georgia home. Plaintiff first became aware of issues with his home in "early 2017" when his wife, Anne Rountree, noticed sagging trim above the garage door. (See Pl.'s Statement of Material Facts, Doc. 31-2, ¶ 4; Rountree Dep., Doc. 26-8, at 38.) This was over four years after construction on the home had finished in 2012. (See Def.'s Statement of Material Facts, Doc. 26-2, ¶ 11; Rountree Dep., at 22.)

Plaintiff hired Tim Durden to repair the home. (See Def.'s Statement of Material Facts, ¶ 18.) Mr. Durden observed workmanship defects in the flashing, weatherproofing, and shingles that led to substantial water intrusion and damage. (See id. ¶¶ 15-19; Photographs of Damage, Doc. 26-7, at 1-62 (documenting water damage).) Architect Frank D'Arcangelo assessed the home and made similar findings and concluded that these construction defects would have been present when the house was constructed. (See id. ¶ 26.) Mr. D'Arcangelo and Mr. Durden both described much of the damage as "deterioration." (See id. ¶¶ 36-41.)

Plaintiff incurred over $300,000 in expenses in repairing and remediating the water damage and defective construction, which included removing and replacing the entire roof and all of the

2

flashing. (See Pl.'s Statement of Material Facts, ¶¶ 12-13.) Plaintiff first provided notice of the loss to Encompass on February 6, 2017. (See id. ¶ 8.)

Plaintiff maintains a home insurance policy with Encompass that provides coverage for all claims or damages not otherwise excluded by the policy. (See id. ¶ 11.) The following exclusions are relevant to this case and apply "regardless of any other cause or event contributing concurrently or in any sequence to the loss." (Insurance Policy, Doc. 31-5, Pl.'s Ex. 12, at 12.)

The exclusion most discussed in the Parties' briefs excludes coverage for damage to the covered real property due to faulty, inadequate, or defective workmanship. (See id. at 12-13.) This exclusion is hereinafter referred to as the "defective construction exclusion." "However, any ensuing loss not excluded or excepted in this policy is covered." (Id.) This language accompanies the defective construction exclusion and is referred to as the "ensuing loss" provision.

Another provision of the policy – referred to as the "deterioration exclusion" – excludes coverage for losses "caused by or consisting of: (1) Wear and tear, aging, marring, scratching or deterioration; . . . (3) Rust or other corrosion . . . ."[1] (Id.

---

[1] In his brief, Plaintiff states that he is not seeking coverage for any rust damage. (See Pl.'s Resp. to Mot. for Summ. J., Doc. 31-1, at 6 n.1.)

3

at 12.) Finally, some forms of water damage – including wet rot – are excluded.[2] (See id. at 13-14.) This provision also excludes damage caused by floods, surface and tidal water, and ground water but does not mention rain. This exclusion is referred to as the "water damage exclusion."

The policy also includes a contractual limitations period which requires suits to be brought within two years "after the inception of the loss." (See id. at 16.)

Plaintiff filed an action for breach of contract in the Superior Court of Bulloch County on December 17, 2018, but Encompass removed to this Court. (See Doc. 1.) Plaintiff asserts a breach of contract claim, alleging that Encompass's denial of coverage is a breach of the policy. (See Compl., Doc. 1-2, ¶¶ 15-20.) Encompass now moves for summary judgment on the portions of Plaintiff's claim that are not covered by the policy.

## II. LEGAL STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are

---

[2] The policy does contain some coverage for mold and fungal remediation caused by a covered loss, but, as Plaintiff notes, Encompass has not identified losses as mold or wet rot. (See Georgia Amendment to Insurance Policy, Doc. 31-5, at 94.)

4

"material" if they could "affect the outcome of the suit under the governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine "if the non[-]moving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001). The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must "draw all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation, internal quotation marks, and internal punctuation omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials in the record, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Because the standard for summary judgment mirrors that of a directed verdict, the initial burden of proof required by either party depends on who carries the burden of proof at trial. Id. at 322-23. When the movant does not bear the burden of proof at trial, it may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See

5

Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Celotex Corp., 477 U.S. 317). The movant cannot satisfy its initial burden by merely declaring that the non-moving party cannot meet its burden at trial. Id. at 608.

If — and only if — the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carries its initial burden. For example, if the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993). On the other hand, if the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116–17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033–34 (11th Cir. 1981). Rather, the non-movant must

6

respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56. In reaching its conclusions herein, the Court has evaluated the Parties' briefs, other submissions, and the evidentiary record in this case.

### III. DISCUSSION

There are three issues in this case. First, whether Plaintiff's claim was timely filed. That is addressed in subsection B and resolved in the affirmative. Second, whether and how the ensuing loss provision applies. That is considered in subsection C, where the Court concludes that the ensuing loss provision is not truly at issue in this case because the application of the policy exclusions is the dispositive issue. Third is whether the policy's exclusions apply to Plaintiff's losses. That is addressed in subsections D and E, where the Court finds that the defective construction exclusion applies to the faulty construction and that the deterioration exclusion does not bar coverage for the water damage. Subsection A explains how insurance policies are construed in Georgia courts.

A. Insurance Contracts in Georgia

The insurance policy at issue states that "the laws of the state in which the residence premises is located shall govern any and all claims or disputes in any way related to this policy."

(Insurance Policy, at 24.) Plaintiff's home is located in Statesboro, Georgia, so Georgia law applies. In Georgia,

> [t]hree well known rules used in the construction of insurance contracts apply. Any ambiguities in the contract are strictly construed against the insurer as drafter of the document; any exclusion from coverage sought to be invoked by the insurer is likewise strictly construed; and insurance contracts are to be read in accordance with the reasonable expectations of the insured where possible.

Richards v. Hanover Ins. Co., 299 S.E.2d 561, 563 (Ga. 1983).

Further, an insurer seeking to invoke an exclusion to deny coverage has the burden of showing the existence of an exclusion and its applicability to the facts. See Nationwide Mut. Fire Ins. Co. v. Erwin, 525 S.E.2d 393, 395 (Ga. Ct. App. 1999); Furgerson v. Cambridge Mut. Fire Ins. Co., 516 S.E.2d 350, 352 (Ga. Ct. App. 1999). On the other hand, "the burden of proving an exception to an exclusion lies with the insured." Mock v. Cent. Mut. Ins. Co., 158 F. Supp. 3d 1332, 1347 (S.D. Ga. 2016) (citing LaFarge Corp. v. Travelers Indem. Co., 118 F.3d 1511, 1516 (11th Cir. 1997)).

B. The Contractual Limitations Period

The Encompass policy contains a contractual limitations period, which requires any suit on the policy to be brought within two years of the inception of the loss. "Inception of the loss" is not defined in the policy. (See Rittle Dep., Doc. 31-5, at 82.) Georgia courts enforce contractual limitations periods in

insurance policies. See, e.g., Bickerstaff Imps., Inc. v. Sentry Select Ins. Co., 682 S.E.2d 365, 367 n.4 (Ga. Ct. App. 2009) (citing Townley v. Patterson, 228 S.E.2d 164, 164 (Ga. Ct. App. 1976)); Allstate Ins. Co. v. Sutton, 658 S.E.2d 909, 913 (Ga. Ct. App. 2008).

Plaintiff first discovered an issue with his home in "early 2017" and filed suit on December 17, 2018. Defendant argues that the inception of the loss was the defective construction, which took place approximately six years before Plaintiff filed suit and therefore this suit is time barred. Plaintiff did not respond to the contractual limitations argument. While water may have begun to intrude shortly after the completion of construction, it did not do so instantaneously as Encompass argues; the water must have intruded at some point between the completion of construction and Plaintiff's discovery of the damage.

"Inception of the loss" can be a nebulous moment in time, but Georgia courts have said that it must be at a point prior to the insurer's denial of the claim. See Gen. Ins. Co. of Am. v. Lee Chocolate Co., 103 S.E.2d 632, 634 (Ga. Ct. App. 1958). In cases of discrete or acute loss, such as a fire, the inception of loss is the date of the fire. See, e.g., Decatur Fed. Sav. & Loan Ass'n v. York Ins. Co., 250 S.E.2d 524, 525 (Ga. Ct. App. 1978) ("The loss occurred under the fire policy when the house burned.") In

a case dealing with a collapsing wall, inception of loss occurred upon discovery of "a detectable serious impairment of structural integrity." Nationwide Mut. Fire Ins. Co. v. Tomlin, 352 S.E.2d 612, 616 (Ga. Ct. App. 1986). However, the definition of collapse in the policy at issue - quoted in the prior sentence - was the controlling factor in that case. See id. ("Under the facts of this case, the inception of the loss began when it was detectable.") The problem in the case at hand is that the damage began on a date unknown following the faulty construction but continued and worsened until discovery. Unlike a fire, latent and progressive damage like mold, wet rot, and water intrusion can fester undetected for years. And to this Court's knowledge, Georgia courts have not decided when the point of inception is for such losses.

Many other states apply a "delayed discovery" rule, which treats latent and progressive losses as having occurred on the earlier of either the discovery of the loss or when a reasonable insured would have become aware of it. See, e.g., Prudential-LMI Commercial Ins. v. Superior Court, 798 P.2d 1230, 1238 (Cal. 1990) (deeming suit timely when filed within one year of appreciable damage occurring such that reasonable insured would be aware that his or her duty to notify insurer was triggered); Caln Vill. Assocs., L.P. v. Home Indem. Co., 75 F. Supp. 2d 404, 411 (E.D. Pa. 1999) (applying Pennsylvania law that a loss occurs for

10

limitations purposes when "the injurious effects first manifest themselves in a way that would put a reasonable person on notice of injury") (citing D'Auria v. Zurich Ins. Co., 507 A.2d 857, 861-62 (Pa. 1986)); Parker v. Worcester Ins. Co., 247 F.3d 1, 3 n.4 (1st Cir. 2001) (applying the discovery rule under Connecticut law and collecting cases from Maryland, California, Indiana, Minnesota, and Nevada); see also 17 Couch on Insurance § 236:23 (3d ed.).

The discovery rule is a logical one to apply to this type of loss. Otherwise it could be that a contractual or statutory limitations period passes without the insured ever becoming aware of the loss. Assuming that such a loss is otherwise covered, that reading of the policy would render the coverage illusory, a result Georgia courts will not tolerate. See Auto-Owners Ins. Co. v. Smith, 798 S.E.2d 93, 96 (Ga. Ct. App. 2017) ("[I]t is well established that a court should avoid an interpretation of a contract which renders portions of the language of the contract meaningless.") Applying the discovery rule in this case, Plaintiff has timely filed suit.

C. The Ensuing Loss Provision

Encompass argues that all of Plaintiff's claims flow from defective construction and thus are excluded from coverage under the defective construction exclusion unless the ensuing loss

exception applies. Encompass then argues that the losses not in-and-of-themselves defective construction are otherwise excluded under the policy. In sum, Encompass argues that any losses directly stemming from construction defects are excluded, and the water damage flowing from those defects are otherwise excluded under the policy. Plaintiff appears to argue that the ensuing loss provision can provide coverage for losses caused by an otherwise excluded loss, namely, the water damage resulting from the defective roof components. As will be explained, the ensuing loss provision is essentially irrelevant in this case; the real controversy revolves around the application of the policy's exclusions.

Defined generally, an ensuing loss provision "provides coverage for loss which follows as a consequence of some preceding [excluded] event or circumstance." David J. Marchitelli, Annotation, *What Constitutes "Ensuing Loss" Caused by Water Damage Within Coverage Provision of Property Insurance Policy*, 14 A.L.R. 7th Art. 6 (2016) (internal quotation omitted).

As both parties note, there is little Georgia case law interpreting ensuing loss provisions. They therefore primarily rely on cases from outside Georgia. However, the Court finds two cases from the Northern District of Georgia most instructive in this case.

In <u>Burgess v. Allstate Ins. Co.</u>, 334 F. Supp. 2d 1351 (N.D. Ga. 2003), the Northern District considered an ensuing loss provision as applied to mold damage. In doing so, it concluded that Georgia applies the "efficient proximate cause doctrine," which "applies when two or more identifiable causes contribute to a single property loss - at least one of them covered under the policy and at least one of them excluded under the policy." <u>Id.</u> at 1360-61 (citing <u>Dunbar v. Davis</u>, 122 S.E.2d 895, 895 (Ga. Ct. App. 1924)). Logically and by the policy language, if both causes are excluded, the ensuing loss provision does not apply and there is no coverage for the loss.

In <u>Burgess</u>, the court ruled that, "[u]nder the efficient proximate cause doctrine, . . . if the mold exclusion combines with a covered risk that is the proximate cause of the loss, then the Plaintiff's losses may be covered." <u>Id.</u> at 1363. It went on to deny summary judgment because the plaintiff had made a *prima facie* showing of a covered loss and a jury question existed as to whether the loss was caused by water damage or mold. <u>See id.</u> at 1364.

This result is congruent with the other Northern District of Georgia case, <u>Green v. Allstate Fire & Cas. Ins. Co.</u>, No. 2:15-CV-205-RWS, 2018 WL 2057356 (N.D. Ga. Mar. 27, 2018). The facts in <u>Green</u> are substantially similar to those here; faulty

13

construction led to water intrusion, the insurer denied the claim because of a defective construction exclusion, and the plaintiffs filed suit arguing that an ensuing loss exception should provide coverage for the water damage. See id. at *1-4. The difference in that case was that the parties agreed to the meaning of the ensuing loss provision[3] but disagreed as to whether water intrusion – the loss that ensued from the defective construction – was otherwise covered under the policy.[4] See id. at *4. That agreed-upon meaning of the ensuing loss provision is consistent with the efficient proximate cause doctrine above: in both instances an ensuing loss provision will not provide coverage for an ensuing loss that is otherwise excluded under the policy. The court in Green went on to find that the plaintiffs failed to carry their burden of demonstrating that the water damage was otherwise covered under the policy and awarded summary judgment to the insurer. See

---

[3] The parties in Green agreed that "if a specified uncovered loss occurs, then a separate loss which follows as a result of the specified, uncovered loss which would otherwise be covered remains covered." Id. at *4.

[4] Another important difference is the broader exclusion for water damage in Green, which excluded losses caused by "weather conditions" and "water or any other substance on or below the surface of the ground, regardless of its source." Green, 2018 WL 2057356, at *4. The water damage exclusion in the Encompass policy discusses surface and ground water as well as biological contaminants like mold commonly caused by water intrusion. (See Insurance Policy, at 13-14.) What the Encompass policy does not mention is rain intrusion.

id. at *5.  Like in <u>Green</u>, the real issue in this case is whether the water intrusion is excluded under the policy.

Plaintiff's two additional arguments are that the ensuing loss provision is ambiguous and that the Court cannot read the provision in a way that effectively writes it out of the policy. The provision is not ambiguous. It explicitly states that "any ensuing loss *not excluded or excepted in this policy* is covered," and its meaning is plain.

Neither does this reading and application of the ensuing loss provision "write it out" of the policy. The purpose of the ensuing loss provision is to ensure that the insurer does not try to avoid coverage for a covered loss by attributing that loss's cause to an excluded loss. The ensuing loss provision does not provide for any coverage independent of already existing coverage. In other words, if an ensuing loss is otherwise excluded, it remains excluded. That is the issue in this case, not whether the ensuing loss provision somehow covers an otherwise excluded loss. And that issue is resolved by a plain application of the exclusions in the policy. Encompass bears the burden of their application.

D. Exclusions

Encompass invokes the defective construction and deterioration exclusions. Encompass identifies much of the damage to Plaintiff's home as deterioration. (<u>See</u> Def.'s Statement of

15

Material Facts, at 6-7.)  Because the parties disagree as to what deterioration means under the policy, that question is addressed below in a separate section.  However, as for any of the losses caused by defective construction, summary judgment for Encompass is appropriate because these are losses excluded under the policy and there is no dispute of fact as to their classification.  This would include the improperly installed flashing, weatherproofing, roof edge, and shingles, as well as any other repairs necessary to properly address those issues - like replacing the roof.  (See Rountree Dep., at 22-23, 44-45; Durden Dep., Doc. 26-4 at 23, 111-12, 140-42; Seeba Dep., Doc. 31-6, at 27-39.)

Although Plaintiff's statement of material facts frames James Seeba's testimony regarding replacing the roof in terms of remediating water damage (see Pl.'s Statement of Material Facts, ¶¶ 12-13), it is plain from Mr. Seeba's and Plaintiff's own deposition that the roof had to be re-done to ensure its proper installation.[5]  Plaintiff has not presented evidence to withstand

---

[5] See Seeba Dep., at 34-35.  Mr. Seeba testified as follows: "Q[:] And why did you feel it necessary to remove the entire roof covering at that time?  A[:] Well, basically to install it properly. . . .  Q[:] So this is not something you can go back in after the fact, attempt to put in flashing . . . .  So the only way to know for sure would be to replace the entire roof?  A[:] Yes."

Plaintiff also testified that he agreed the entire roof would have to be replaced to fix the construction defects and that "I don't see any way you can [fix the defects] because we had damaged roof sheathing or decking.  And so I don't know of any way to replace

16

a directed verdict as to these losses and therefore summary judgment is appropriate for Encompass on these losses.

E. Deterioration

This leaves discussion of losses designated as "deterioration." Encompass points to numerous examples of "deterioration" caused by water exposure, including Mr. Durden's testimony that approximately fifty percent of the home's sheathing had deteriorated. (See Def.'s Statement of Material Facts, ¶¶ 36-41; Durden Dep., at 82.) The Encompass policy excludes coverage for "wear and tear, aging, marring, scratching or deterioration . . . ." The policy does not further define deterioration.

Encompass argues that these instances of water damage constitute deterioration under the policy, citing broad dictionary definitions of the word.[6] To apply the strict dictionary definition Encompass suggests would in effect exclude any conceivable loss from coverage; by the dictionary definition a

---

that without replacing the roof covering." Rountree Dep., at 44-45.

[6] Definitions of "deterioration" include: "the action or process of becoming impaired or inferior in quality, functioning, or condition," *Deterioration*, Merriam-Webster Dictionary (online ed. 2020) and "a constitutional hurt or impairment, involving some degeneration in the substance of the thing, such as that arising from decay, corrosion, or disintegration," *Deterioration*, Black's Law Dictionary (5th ed. 1979).

17

fire, flood, earthquake, or even bomb would cause deterioration. That cannot be the meaning of the exclusion.

While the word "deterioration" may have a broad dictionary definition, its meaning within the policy is informed by the words surrounding it. See *Noscitur A Sociis*, Black's Law Dictionary (11th ed. 2019) ("A canon of construction holding that the meaning of an unclear word or phrase, esp. one in a list, should be determined by the words immediately surrounding it."); Anderson v. Se. Fid. Ins. Co., 307 S.E.2d 499, 500 (Ga. 1983) (applying *noscitur a sociis* to an insurance contract). Here, deterioration is accompanied by the words "wear and tear, aging, marring," and "scratching." Taken as a whole, this exclusion contemplates an impairment to property that occurs with normal and reasonable use over time. For example, the threshold of a front door would deteriorate over time as entrants stepped through it and the door is opened and closed. That is the sort of damage the provision excludes, but that is not the sort of damage that occurred here.

The damage identified as deterioration in this case is some sort of impairment caused by rainwater intrusion. Accordingly, a question of fact exists as to whether that damage identified as deterioration is excluded under the policy. See Golden Pantry Food Stores, Inc. v. Lay Bros., Inc., 597 S.E.2d 659, 663 (Ga. Ct. App. 2004) ("Construction of a contract is a question of law for

the court.  Where any matter of fact is involved, the jury should find the fact.") (quoting O.C.G.A. § 13-2-1).

## IV. CONCLUSION

Despite the Parties' contentions regarding the ensuing loss provision, this case ultimately comes down to whether the losses are excluded under the policy; the ensuing loss provision states as much.  The policy provides for coverage for any loss not otherwise excluded; thus, Encompass bears the burden of demonstrating the applicability of an exclusion.  Encompass did so as to the defectively constructed components, as well as those components that must be necessarily replaced to fix the defective ones – effectively, everything except the damage identified as deterioration.  Accordingly, the motion for summary judgment (Doc. 26) is **GRANTED** as to those components.  Summary judgment is **DENIED** as to the damage Encompass identifies as deterioration.  This case shall proceed to trial in due course on the question of whether the water intrusion qualifies as deterioration under the policy.

**ORDER ENTERED** at Augusta, Georgia this 17TH day of September, 2020.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA